UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROOSEVELT D. GUY,

    *Plaintiff*,

v.

THOMAS J. VILSACK,

    *Defendant.*

Civil Action No. 12-1557 (ESH)

## MEMORANDUM OPINION

Plaintiff Roosevelt Guy filed a *pro se* lawsuit against Thomas Vilsack in his official capacity as the Secretary of the Department of Agriculture ("USDA"), alleging that USDA denied his farm loan application based on his race, in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691. (Complaint, Sept. 18, 2012 [ECF No. 1].) Defendant has now moved to dismiss plaintiff's case based on plaintiff's failure to comply with various Court orders and his allegedly inadequate discovery responses. (Motion to Dismiss, June 21, 2013 [ECF No. 20] ("Mot.").) For the reasons stated below, defendant's motion will be denied.

## BACKGROUND

### I. DISCOVERY RESPONSES

During discovery, defendant served on plaintiff twenty-one requests for production, thirteen requests for admissions, and fifteen interrogatories. (*See id.* at 7-16.) Plaintiff e-mailed documents and responses to defense counsel on May 26 and May 28, 2013. (*See id.* at 7-8.) In addition, he separately mailed other documents and responses to defendant, which were received by defense counsel on or about June 6, 2013. (*See id.* at 7.) However, on May 26, 2013,

1

plaintiff had emailed defense counsel and instructed her to "please ignore the responses in the packet [he] mailed." (*See* Mot. Ex. C, Plaintiff's May 26, 2013 Email.) Although defendant has apparently sought clarification as to the status of the hard-copy documents, to date plaintiff has not responded. (*See* Mot. at 7-8.)

In his e-mailed materials, plaintiff provided cursory responses to many of the interrogatories, instructing defendant to refer to plaintiff's complaint and the investigation report produced in response to his internal complaint. (*See id.* at 8-13 (reproducing plaintiff's responses to Interrogatory Nos. 1-6).) He also declined to provide any information about his requests for damages because he said he intended to ask the court to bifurcate discovery with respect to damages. (*See id.* at 13-14 (reproducing plaintiff's response to Interrogatory Nos. 7, 8).) In addition, he declined to provide any information about the mental and emotional suffering he alleges he suffered in response to defendant's actions, arguing that such information is protected by the doctor-patient privilege. (*See id.* (reproducing plaintiff's response to Interrogatory No. 8).) Finally, he did not provide any response to Interrogatory Nos. 9-15. (*See id.* at 14.)

With respect to defendant's requests for production, defendant claims that none of the hard-copy documents that plaintiff mailed to defendant's office appear to be responsive to any of defendant's document requests. (*See id.* at 15.) Furthermore, defendant claims that the documents attached to plaintiff's May 26 and May 28 e-mails "contained different, less complete responses than the documents in his mailing." (*See id.*)

Finally, it appears that plaintiff's responses to defendant's requests for admissions were included in the mailing that he later instructed defendant not to consider. (*See id.* at 15-16.) It is unclear from the record whether any such responses were also included in his e-mailed

2

responses. Defendant asserts that the responses included in the hard-copy mailing are inadequate because some of them contained blanket or irrelevant objections. (*See id.* at 16.)

## II. PLAINTIFF'S DEPOSITION

Plaintiff, who resides in Ohio, appeared at the initial scheduling conference by telephone. At that time, the Court set a status conference following the close of discovery for June 11, 2013, and instructed plaintiff that he would need to appear in person at that conference. (*See* Scheduling Order, Jan. 16, 2013 [ECF No. 11].)

During discovery, defendant requested plaintiff's availability for his deposition, and plaintiff made it clear that he was only willing to participate by telephone. (*See* Motion to Compel Plaintiff to Appear in Person for his Deposition in this Jurisdiction, May 14, 2013 [ECF No. 12] ("Motion to Compel") Exs. A-C.) In response, defendant moved to compel plaintiff to appear for his deposition in person and to extend the discovery deadline to accommodate the deposition. (*See generally* Motion to Compel.) Plaintiff offered two reasons for his refusal to appear for his deposition in person: first, that he believed the government wanted to observe his mental impressions, which he argued were privileged based on his status as a *pro se* litigant; and second, that he feared for his safety at the hands of the government. (*See* Order, May 28, 2013 [ECF No. 15] at 1-2.) This Court granted defendant's motion, but arranged for plaintiff's deposition to be taken in the United States Courthouse and overseen by Magistrate Judge Deborah Robinson. (*See id.* at 2.) The deposition was scheduled to take place on June 10, 2013, the day before the previously-scheduled post-discovery status conference, so that plaintiff would only have to make one trip to Washington, D.C., for both events.

On June 10, 2013, plaintiff did in fact appear in this courthouse for his deposition. During the deposition, plaintiff had with him some notes he had prepared in advance of the

deposition. (*See* Mot. Ex. A, Guy Deposition Transcript Excerpts ("Tr.") at 40.) Defense counsel asked plaintiff not to look at his notes while testifying unless it was necessary to refresh his recollection. (*See id.* at 107-08.) At that time, after approximately one and one-half hours on the record, plaintiff stated that he wanted to go talk to Magistrate Judge Robinson, and left the room. (*See id.* at 108.) Defense counsel followed plaintiff into the hallway so that she could be present for his discussion with Judge Robinson. (*See* Mot. at 5.) There, in front of several marshals and other court staff, plaintiff stated that he did not want to be alone with defense counsel behind chambers doors, and went back into the deposition courtroom. (*See id.*) Once back in the courtroom, defense counsel "demand[ed] an apology" for plaintiff's allegedly "slanderous remarks." (Tr. at 109.) Plaintiff stated that he was having a panic attack, and then left the deposition. (*Id.*)

Later that same day, Magistrate Judge Robinson held a telephone call on the record with defense counsel (who was present in the courtroom) and plaintiff (who had left the building). (Mot. at 6.) On that call, Judge Robinson first directed plaintiff to return to the courthouse to continue his deposition that afternoon. (Tr. at 118.) When plaintiff resisted, stating that he was "very scared" and needed to take his medication and speak with his father, Judge Robinson amended her order and instructed him to appear at 9:30 a.m. the next day to continue the deposition. (*Id.* at 118, 124-25.) She also offered to remain in the courtroom for the remainder of the deposition to make plaintiff more comfortable. (*Id.* at 118.)

The next morning, plaintiff did not appear at the courthouse at 9:30 a.m. for his deposition. (*See* Mot. at 7; Plaintiff's Response to Defendant's Motion to Dismiss, July 8, 2013 [ECF No. 21] ("Opp'n") at 3.) He also did not appear at 11:30 a.m. for the status conference before this Court. Instead, he called chambers and informed the Court that his anxiety had been

4

so severe that he had driven back to his home in Ohio during the night. (*See* Mot. at 7; Opp'n at 3; Order, June 11, 2013 [ECF No. 19] at 1.)

## ANALYSIS

### I. LEGAL STANDARDS

Defendant seeks dismissal of plaintiff's case under either Rule 37 or Rule 41. (*See* Mot. at 3.) Rule 37 permits the Court to order sanctions in response to a party's failure to attend his own deposition, serve answers to interrogatories, or respond to a request for inspection. Fed. R. Civ. P. 37(d). A range of sanctions are available to the Court in such a situation, including dismissal of the action. *Id.*

Rule 41 states, in pertinent part: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). However, the D.C. Circuit has admonished that "[d]ismissal is a harsh sanction and should be resorted to only in extreme cases." *Camps v. C&P Tel. Co.*, 692 F.2d 120, 124 (D.C. Cir. 1981) (internal quotation marks omitted). Thus, "[a] District Court may dismiss under Rule 41(b) 'only after less dire alternatives have been explored without success.'" *Gardner v. United States*, 211 F.3d 1305, 1308 (D.C. Cir. 2000) (citing *Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 187 (D.C. Cir. 1985)). "Considerations relevant to ascertaining when dismissal, rather than a milder disciplinary measure, is warranted include the effect of a plaintiff's dilatory or contumacious conduct on the court's docket, whether the plaintiff's behavior has prejudiced the defendant, and whether deterrence is necessary to protect the integrity of the judicial system." *Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990).

## II. DISCOVERY RESPONSES

Defendant argues that plaintiff's discovery responses were inadequate and justify dismissal of his case. (*See* Mot. at 20-21.) Plaintiff did not offer any substantive response to defendant's complaints, other than to say that "Defendant has no authority to request sanctions simply because Defendant does not like Plaintiff's Response to Defendant's written discoveries." (Opp'n at 3.) Plaintiff also pointed out that defendant failed to file a certification stating that it "has in good faith conferred or attempted to confer with [plaintiff] in an effort to obtain the answer or response without court action," as required by Rule 37(d)(1)(B). (*See id.*)

As an initial matter, plaintiff is correct that defendant has not previously raised any concerns about plaintiff's discovery responses prior to seeking sanctions from this Court. Not only does Rule 37 require such an attempt at resolution, but the Scheduling Order in this case clearly instructs the parties that:

> Counsel are required to confer in good faith in an effort to resolve all discovery disputes before bringing the dispute to the Court. If counsel are unable to resolve the discovery dispute, counsel shall arrange a telephone conference with the Court by contacting Chambers. Counsel shall not file discovery motions without a prior conference with the Court and opposing counsel.

(Scheduling Order, Jan. 16, 2013 [ECF No. 11] ¶ 9.) In light of defendant's failure to follow the procedures laid out by both the federal rules and by this Court's Scheduling Order, defendant cannot seek dismissal based on deficiencies in plaintiff's discovery responses, especially since all discovery (with the exception of plaintiff's deposition) has been completed and thus, any deficiencies in plaintiff's discovery responses cannot be raised at this late date.

## III. PLAINTIFF'S DEPOSITION

Defendant also seeks dismissal of plaintiff's case based on his refusal to complete his in-

person deposition.  (*See* Mot. at 18-20.)  There can be little doubt that plaintiff has disobeyed orders of this Court and of Magistrate Judge Robinson; indeed, plaintiff admits as much.  (*See* Opp'n at 3.)  Nor can there be any doubt that his failure to complete his deposition has prejudiced defendant.  Given the limited number of documents produced by plaintiff, his deposition testimony represents defendant's only real opportunity to investigate plaintiff's claims.

However, the Court is not convinced that dismissal of plaintiff's case is the appropriate sanction at this time.  Plaintiff has been consistent in his explanation that he defied this Court's orders because he struggles with anxiety.  First, he stated to the Court that his resistance to appearing for his deposition in person stemmed in part from the fact that he feared for his safety at the hands of the government.  (*See* Order, May 28, 2013 [ECF No. 15] at 2.)  Then, the day of his deposition, he repeatedly stated that he got very anxious during his deposition and that he began having a panic attack after his confrontation with defense counsel in the courthouse hallway.  (*See* Tr. at 109, 114-18.)  He explained multiple times that he was "very scared" (*id.* at 118) or "very in fear" (*id.* at 125), and that he needed some time to take his medication and think things through.  (*Id.* at 118, 124.)  In his opposition to defendant's motion, he reiterated that he "experienc[ed] a horrific panic attack," and "simply could not bring [him]self to return to the Court house" on the day of the deposition.  (Opp'n at 3.)  Indeed, he claims that his "anxiety was so severe [he] drove, through the night, back to Ohio."  (*Id.*)  Thus, this is not a case where plaintiff has been intentionally "dilatory or contumacious."  *Bristol Petroleum*, 901 F.2d at 167.  Moreover, in light of the fact that plaintiff's actions have been compelled by his unsettled mental state, it cannot be said that imposing harsh sanctions on plaintiff would deter future similar

7

conduct by this plaintiff or others. Thus, the Court declines to grant the "harsh sanction" of dismissal of plaintiff's case at this time. *Camps*, 692 F.2d at 124.

That leaves the Court with the question of how to proceed in this matter. Plaintiff stated in his motion that he cannot bring himself to come back to Washington, D.C. (Opp'n at 3.) However, as this Court made clear in its Order requiring plaintiff to appear for his deposition the first time, "[a]s the plaintiff in this matter, Mr. Guy must be present for his deposition in the forum in which he filed suit." (Order, May 28, 2013 [ECF No. 15] at 2.) *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 2013 WL 1831296, at *4 (D.D.C. May 1, 2013) ("A party that chooses to initiate litigation and invoke the legal protections of the forum should expect to appear for deposition in that jurisdiction." (citing *Cobell v. Norton*, 213 F.R.D. 43, 47 (D.D.C. 2003)). Moreover, although the Federal Rules of Civil Procedure do provide that a deposition may be taken by remote means, *see* Fed. R. Civ. P. 30(b)(4), the Court does not believe that it would be appropriate to deny defendant the benefit and convenience of an in-person deposition in this case. Rather, there are less restrictive methods of managing plaintiff's anxiety than permitting a telephone or video deposition. One of those methods— having the deposition take place in the courthouse in the presence of the magistrate judge to deal with any disputes that may arise—has already been tried, to no avail. However, the Court is willing to go one step further and have Magistrate Judge Robinson remain in the courtroom for the duration of the deposition, so as to assuage plaintiff's concerns about ever having to be alone with opposing counsel.

The Court will therefore deny defendant's motion to dismiss plaintiff's case, and will instead order plaintiff to return to Washington, D.C., to complete his deposition in the federal courthouse. By this Memorandum Opinion, the Court is requesting Magistrate Judge Robinson

to set a time for this deposition within the next forty-five days and that it be held in the Magistrate Judge's presence. The deposition should be limited to no more than five and a half hours and it can occur over a two-day period. Immediately after the conclusion of the deposition, there will also be a status conference before this Court in Courtroom 23A. Should plaintiff still refuse to return to this courthouse to complete his deposition, the Court will have no choice but to dismiss plaintiff's case under Fed. R. Civ. P. 41.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is denied.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: August 19, 2013